STEPHEN H. HARRELSON et al. v. WILLIAM H. HARRELSON, SR., et al., Appellants.

Division One, June 10, 1924.

1. **RESULTING TRUST: Gift.** A voluntary conveyance by a father to the husband of his daughter did not create a resulting trust in the daughter's favor; as she paid no money, whatever interest she took must depend on the theory that the conveyance was a gift to her.

2. **GIFT: To Daughter: Conveyance to Her Husband.** A conveyance by a father and mother to the husband of their daughter, for a recited consideration of fifty dollars, and bearing on its face no evidence of a gift, if a gift at all, was a gift to the son-in-law, and not to the daughter; but as it recites a monetary consideration, it was not a gift, since a gift is a voluntary transfer of property without consideration or compensation from the donee to the

donor. And not being a gift to either, but a conveyance for a valuable consideration, upon a sale of the land and a re-investment of the proceeds in other land conveyed to the husband alone the wife took no resulting trust, but only her marital rights.

3. ———: Resulting Trust: Deed to Husband and Wife: Sale: Investment of Proceeds. A conveyance to a husband and wife creates title by the entirety in both, and if the land is sold and the proceeds invested in other land which is conveyed to the husband alone the wife does not have a resulting trust in the latter tract, but upon her death, leaving him surviving her, the entire title vests in him as the survivor, even though the original conveyance was a gift to both by her parents and its restrictions could be imposed on the latter conveyance.

4. ———: ———: Failure to Testify. In a suit to establish a resulting trust in favor of the wife's children in land conveyed to the husband alone, where there is a total failure of proof that her money paid for it, no unfavorable inferences are to be drawn from his failure to testify, even if he were competent to testify after the wife's death.

Headnote 1: Trusts, 39 Cyc. 128. Headnote 2: Gifts, 28 Cyc. secs. 1, 9; Trusts, 39 Cyc. 128. Headnote 3: Husband and Wife, 30 C. J. secs. 85, 105; Trusts, 39 Cyc. 142 (1926 Anno). Headnote 4: Evidence, 22 C. J. sec. 57.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED.

*Ras Pearson* for appellants.

The main point contended for by appellant is that the judgment and decree of the court in establishing the resultant trust in the land is not sustained by the evidence; that the decree is against the evidence and against the law under the evidence. (1) This is a suit to establish a resultant trust in the lands described in plaintiffs' petition. "To do this the rule is that parol evidence to establish a resultant trust as to realty must be so strong, cogent and convincing as to leave no doubt in the mind of the chancellor as to the creation of a trust." Jack v. Link, 291 Mo. 295; Gammage v. Latham, 222 S. W. 470;

Williams v. Keefe, 241 Mo. 374; Easter v. Easter, 246 Mo. 417; McKee v. Downing, 224 Mo. 142; Smith v. Smith, 201 Mo. 547. Appellant contends that the evidence does not meet these requirements. (2) Respondents did not show, or pretend to show, how much of Elizabeth Harrelson's money, if any, went into the purchase of the original tract of land in the western part of Pike County, in 1864, or how much of her money, if any, went into the purchase of land described in plaintiffs' petition purchased in 1892 from Blackwell. "A person in whose favor a resulting trust is sought to be enforced must show specifically by clear, convincing and unequivocal evidence what amount of his or her money went into the purchase price of the property. If proof of amount is uncertain the resulting trust will fail." Williams v. Keefe, 241 Mo. 372; Smith v. Smith, 201 Mo. 547; Tillman v. Tillman, 50 Mo. 40; Rodgers v. Bank, 69 Mo. 560; Kidwell v. Kirkpatrick, 70 Mo. 214. (3) The original land purchased from Stephen Henderson located in the western part of Pike County was deeded to William H. Harrelson, Sr., individually in 1864. The expressed consideration in the deed was $50. There is no evidence in the record as to the value of that land at that time, or that Mrs. Harrelson, the wife, furnished any part of the purchase price of this land. Mordell v. Riddle, 82 Mo. 36; Smith v. Smith, 201 Mo. 533.

*Hostetter & Haley* for respondents.

(1) Where the husband uses money or property of the wife in the purchase of real estate and the title is taken in his own name, he will be held to hold the title as trustee for the wife, and in the event of her death, for her heirs at law. Jones v. Elkins, 143 Mo. 647; McLeod v. Venable, 163 Mo. 536; Donovan v. Griffith, 215 Mo. 149, 20 L. R. A. (N. S.) 825; Seay v. Hesse, 123 Mo. 450; Winn v. Riley, 151 Mo. 61; Hardware Co. v. Horn, 146 Mo. 129; Johnson v. Johnson, 173 Mo. 115. (2) It is immaterial in so far as the principle we contend for is concerned, whether the title to the wife's land (acquired by gift, de-

vise, or by purchase with her own separate property or money) is taken by the husband in his own name or in the joint names of himself and wife; he is still held as trustee of the title for his wife or after her death for her heirs at law. Even where the title to such land is taken in the names of both husband and wife, it does not create an estate by the entirety, so that the husband, if he be the survivor, would continue as the sole owner; in other words, he still holds the title as trustee to the extent of his wife's interest therein and is accountable to her heirs at law as such trustee. Jones v. Elkins, 143 Mo. 647; McLeod v. Venable, 163 Mo. 536; Donovan v. Griffith, 215 Mo. 149.

GRAVES, J.—The petition is in two counts. By the first count plaintiffs seek to have declared a resulting trust in 36.52 acres of land near Cyrene, Pike County, Missouri. William H. Harrelson, Sr., acquired a paper title to this land February 27, 1892, by deed from James M. Blackwell and wife, for a recited consideration of $1278.20. At this date the wife of William H. Harrelson, Sr. (Elizabeth R. Harrelson) was living, but her death occurred on September 18, 1919. Thus it appears that the record title remained in William H. Harrelson, Sr., about 27 years, and continued in him until the decree in this case on October 21, 1921. The petition in the first count alleges that William H. Harrelson, Sr , and Elizabeth R. Henderson were married in 1865 or 1866. Excepting William H. Harrelson, Sr. (the husband of Elizabeth R. Harrelson, *nee* Henderson), the parties to this action are the children of the marriage above stated. Some of the children are plaintiffs, and some, with the husband, or widower, are the defendants. It is charged in this count that the land was paid for by the use of the money of Elizabeth R. Harrelson, and the title taken in the name of William H. Harrelson, Sr., without her knowledge or consent. This count concluded with this prayer:

"Wherefore plaintiffs pray the court to adjudge and

decree that said William H. Harrelson, Sr., holds only the bare naked legal title to said premises, and further that the equitable and beneficial title to said premises is in the plaintiffs and the defendants other than William H. Harrelson, Sr., as the surviving children and lineal heirs at law of Elizabeth R. Harrelson, deceased, and further that William H. Harrelson, Sr., holds the title as trustee for said lineal heirs at law as to such premises, and further they ask the court to adjudicate that the said William H. Harrelson, Sr., does not hold any beneficial interest in the title to said premises, except such interest as he may be entitled to, if any, by reason of being the surviving widower of said Elizabeth R. Harrelson, and plaintiffs further pray for such other and further orders, judgments and decrees as the fact may show they are entitled to, and they further pray for general relief.''

The second count of the petition is one in partition. The answer is short, and as it contains some admissions, which may be of value, we quote it in full as follows:

''Now come defendants and for their joint and separate answer to plaintiffs' petition filed in this cause, and to the first count thereof, admit that plaintiffs and defendants, other than William Harrelson, Sr., constitute and are all of the heirs at law of Elizabeth R. Harrelson who died intestate in Pike County, Missouri, on September 18, 1919; admit that William Harrelson, Sr., is the widower of said Elizabeth R. Harrelson, deceased; admit that William H. Harrelson, Sr., and Elizabeth R. Harrelson were married in 1865 or '66; admit that William H. Harrelson, Sr., acquired the title to the property described in plaintiffs' petition but here and now aver and charge the fact to be that the defendant William H. Harrelson, Sr., is the sole owner of said real estate, holding same in fee-simple and absolutely, and that plaintiffs and neither of them have right, title or interest whatever in and to said real estate; further answering the defendants deny each and every allegation in plaintiffs' petition contained in first count thereof, not herein specifically admitted to be true.

"Answering to the second count of plaintiffs' petition defendants deny each and every allegation therein contained.

"And now having fully answered to plaintiffs' petition and to each count thereof the defendants ask to be dismissed with their cost."

The finding and judgment was for plaintiffs upon each count. Upon the first count the decree divested William H. Harrelson, Sr., of all interest in the land, except a courtesy interest. By the decree upon the second count the land was ordered sold, subject to the life estate of William H. Harrelson, Sr., and the proceeds of sale divided between the children of the said marriage. From such judgments and decrees all the appellants have appealed. Details are left to the opinion.

I. The facts in this case present a peculiar situation. The petition seeks the establishment of a resulting trust in 36.52 acres of land near Cyrene, Pike County, Missouri, on the theory that the money of Elizabeth R. Harrelson was used by her husband in payment thereof in the year 1892. There is no contention that William H. Harrelson, Sr., the husband, ever got any money from his wife at or about that time, or at any other time. The whole contention lies within these following alleged facts, said to be within the record. It is charged in the petition, and admitted in the answer, that in the year 1865 or 1866, William H. Harrelson and Elizabeth R. Henderson were married. Plaintiffs contend that Stephen Henderson, the father of Elizabeth R. Henderson, gave to Elizabeth 120 acres of land near Middleton in said Pike County. The record evidence by defendants is a general warranty deed to this land from Stephen Henderson and wife Elizabeth Henderson to William H. Harrelson of date 30th day of July, 1864, and recorded in Book "Z" at page 400 and 401 of the deed records of Pike County.

The recited consideration was fifty dollars. Plaintiffs plead the marriage to have been in 1865 or 1866, and defendants admit the marriage to have been in 1865 or

1866. There is some oral testimony of a later date. At least the admitted date of marriage (record admission) is some time after the deed to Harrelson, Sr. The petition makes no charge that this deed of 1864 created a resulting trust. It is not mentioned in the petition. Evidence tending to show that the land conveyed by this deed was a gift by the father to his daughter, was objected to throughout the trial. This state of facts present the first question. A further question is, even if the evidence so offered, was competent, is it sufficient in law to establish the resulting trust declared by the court? The court proceeded upon the theory that the 120 acres of land near Middleton, although deeded to Harrelson, Sr., in 1864, was in fact a gift to the wife of said Harrelson, and then follows the proceeds of the last 80 acres of the 120 acres into the land involved in this suit. Such was the trial theory, and such are at least two contentions in the case.

II. Learned counsel for respondents speak of the 120 acre transaction as a gift to the "newlyweds," when the record admissions are that there were no "newlyweds" until 1865 or 1866. We say record admissions, because plaintiffs plead this fact and defendants' answer admits it. But Harrelson got a deed in 1864 in July, which was placed of record, and is in evidence here. There were no "newlyweds" in 1864. We shall not make this matter of admission against interest a turning question in the case. We suggest it and pass it.

Counsel for appellants seemingly contend in their brief that plaintiffs' position is that the 120-acre transaction was a resulting trust, because the money of the wife went into this original 120 acres of land.

Resulting Trust.

We do not so understand plaintiffs' contention. As we gather their contention, it is that this land (120 acres in western part of Pike County) was a gift from Henderson and wife to their daughter, but that the deed was made out to the husband, William H. Harrelson, Sr. They do not contend, nor does the evidence show, that Elizabeth Harrelson, nee Henderson, put any of her money into this land. It is not shown that she had any

money at or about the time of the deed, but it is shown that Harrelson, Sr., worked for her father prior to their marriage. There could be no resulting trust as to this land upon the theory that any of Elizabeth's money went into the purchase price. Her alleged interest must depend upon the theory of a gift, or not at all. Of this proposition next.

III. Was the transaction a gift of land to Mrs. Harrelson? We think not under the evidence here.

(a) The conveyance was by warranty deed for an expressed money consideration, and the instrument upon its face bears no evidence of a gift. It is true that there is another deed spoken of in evidence, which will be noted later. If a gift at all the written evidence of the gift would make it one to Harrelson, rather than to his wife. This deed recites the receipt of a money consideration, and a gift is a thing without consideration from the donee to the donor. "A gift has been judicially defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor." [12 R. C. L. 93; Gray v. Barton, 55 N. Y. l. c. 72; McKensie v. Harrison, 120 N. Y. l. c. 265; Ingram v. Colgan, 106 Cal. l. c. 124.] The deed in evidence refutes the idea of a gift.

*Gift.*

(b) But it is urged that the oral evidence tends to show a prior deed, and through it a gift to the wife. This evidence is shadowy. It comes from one of Mrs. Harrelson's sisters, a Mrs. Susan Burkholder. This witness persistently and repeatedly testified that there had been two deeds made, the first to both of the two young married folks (William H. Harrelson and Elizabeth Harrelson) and that it having gotten burned in the court house fire at Bowling Green, a second deed was made to William H. Harrelson alone.

*Resulting Trust.*

In one place she says the first deed was to Elizabeth alone, but she so repeatedly thereafter, in answer to both court and counsel, reiterated the fact that it was to both of them, that if we could find that there were two deeds made at all, we would have to find that the first one was

304 Mo. Sup.—17.     —

to the husband and wife, and therefore created an estate by the entirety, which estate became the sole property of the survivor when the wife died in 1919, if the land here involved was imposed with the restrictions of this alleged first deed. This evidence as to a deed would not add to plaintiffs' claims. It does not show a resulting trust. We should add here that this witness fixed the date of the marriage in 1865, and the making of this alleged first deed shortly after the marriage. We do not believe that there was more than the one deed. The evidence tends to show that the court house burned in 1865. In this fire records "O" and "S", in the Recorder's office were burned. The deed introduced in evidence was recorded in record "Z". So far as this record shows that book is now in existence. We should not overlook the fact that Mrs. Burkholder says that she saw this deed after it was recorded, and if so the burning of the court house would not account for its absence at the trial. True she says that was burned, but the only fire wherein it might have been burned was that of the court house. She says that she hasn't a good memory for some things, and, in this we agree with her. She says that the second deed was made after the court house fire, and was to Harrelson alone, but in this she is wrong, because the deed in evidence was made in 1864, and recorded in 1864, which was before the fire. We think this old lady has just gotten things mixed by the great lapse of years. We don't think there was such a deed. But if there was a deed such as she described, the situation would not be changed. It was a deed to husband and wife, which created an estate by the entirety, and the husband being the survivor got it all, even if it could be said that the land here involved had the same *status*. [Gibson v. Zimmerman, 12 Mo. 386; Hall v. Stephens, 65 Mo. 1. c. 676; Russell v. Russell, 122 Mo. 235; Edmondson v. City of Moberly, 98 Mo. 523; Harrison v. McReynolds, 183 Mo. 1. c. 538.]

There are no conditions shown by this old lady's evidence that would make the conveyance that she described as the first deed other than a conveyance to husband and

wife, and therefore creating an estate by the entirety. But the theory of the plaintiffs is a resulting trust, and proof of an estate by the entirety does not accord with their claims, and this would eliminate this alleged deed.

(c)    There is an attempt to show by admissions of William H. Harrelson, Sr., that the 120 acres of land belonged to his wife. This no doubt upon the theory that he held the land (120 acres) really in trust for the wife.

Whether this evidence was competent over the objections urged, we pass for the present. Whether by parol evidence the character of the written instrument could be changed we likewise pass. The real contention is that a resulting trust was created in the 36.52 acre tract, because the wife's money paid for the land. The only way that they attempt to show that fact (the origin of the purchase money) is by claiming that the 120-acre tract was a gift by the father to the daughter, and that the husband held such land in trust for the wife, and when it was sold and the proceeds invested in the land here involved, the purchase money thus received impressed a trust upon that land.

We have said above that the deed, which speaks louder than words, refutes the idea of a gift to any person. Harrelson had been working for Henderson, and no doubt courted the daughter at the same time. The deed was clearly made to Harrelson long before the marriage. But it is urged that Harrelson admitted that the property was his wife's property. Going to this evidence, Stephen Harrelson said that his father had said that he got 120 acres from Stephen Henderson; "that grandfather gave it to them, and even went to Louisiana and bought the lumber."

Orval Harrelson testified that his father had said "that granddad give the place to him and mother when they were married, or about the time they were married."

There is evidence from this witness that the mother said that she would not sign a deed to the property in suit, but as this was the second homestead, these statements cut but little figure, if competent at all. The

foundation is the original tract of 120 acres, because if the mother had nothing but a marital right in that, there is no foundation for the alleged resulting trust in the property here involved. Finally upon re-direct examination the witness was ultimately induced to say:

"A. Well, I will tell you: When he wanted to sell the land, he asked mother, 'If she would sign her right away to it,' and mother said, 'No, that land is mine, come to me from father,' and he said, 'I am going to leave that for my children.' "

He had many times reiterated that the father had always said that the grandfather had given the land to the two of them.

Chamberlain, another son-in-law of Henderson, said that he heard that "father Henderson *give them* a piece of land, that is all I know about it." The same witness said that Henderson gave them (Chamberlain and wife) a piece of land, deed to W. P. Chamberlain and Elizabeth A. Chamberlain, his wife. According to this witness Harrelson and wife were married before he got acquainted with the family in 1867.

There is some evidence to the effect that Henderson gave all his children a farm, but it is general in its character. The evidence upon a whole is insufficient to show a gift from Henderson to his daughter, Mrs. Harrelson. In fact a gift to land must be evidenced by some proper writing, and none appears here. We do not mean to say that Henderson could not have made an oral gift, and put the daughter into possession, and after she had improved it on the faith of the promise to convey, she could not have forced a conveyance or a decree of title. That is not this case. Harrelson had the deed from Henderson, and when he took possession the presumption is that it was under that deed. The force of this deed from Henderson and wife to William H. Harrelson is not even tarnished by evidence of the character here introduced. There is a failure to show that the wife had other than marital rights in the 120-acre tract. There is a failure to prove that the wife's money paid for the land in dispute. In so

ruling we are not unmindful of the fact that Mr. Harrelson did not testify at the trial. Until the plaintiffs made some kind of a case against him he was not called upon to give evidence. He could stand upon his deed, as was apparently done. This disposes of the case without ruling upon the competency of the evidence.

The judgment should be reversed, and it is so ordered. All concur.