E. LOUIS JACOBS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26249. Promulgated August 11, 1930.

*Laurence Arnold Tanzer*, Esq., and *James Craig Peacock*, Esq., for the petitioner.

*Bruce A. Low*, Esq., and *Leslie H. Rushbrook*, Esq., for the respondent.

OPINION.

PHILLIPS: During the taxable year petitioner sold property which he had acquired in 1920 at a cost to him of $885,750. It is the contention of petitioner that this property was acquired by him as a gift from his brother and that in computing his gain the fair market value, and not the cost, is to be used.

It seems clear that the brother never became the owner of this property. All that he had was a contract for its purchase. If there was any gift, it was of the contract to purchase the property and the contract for its lease. Even with respect to these there was an element of purchase, for petitioner undertook to pay his brother $32,000 in addition to the amount which the brother was obligated to pay; this $32,000 being secured by a third mortgage upon the property. The transaction lacks one of the vital elements of a gift, i. e., lack of a valuable consideration. *Gray* v. *Barton*, 55 N. Y. 68; *McKenzie* v. *Harrison*, 120 N. Y. 260; 24 N. E. 458; *Blair* v. *Rosseter*,

33 Fed. (2d) 286; *Harrelson* v. *Harrelson*, 304 Mo. 250; 263 S. W. 107; *Lewis Estate*, 139 Pa. St. 640; 22 Atl. 635; *Noel* v. *Parrott*, 15 Fed. (2d) 669; *Curriden* v. *Chandler*, 79 N. H. 269; 108 Atl. 296; *Kearse* v. *Kearse*, 276 S. W. 690; *Martin* v. *Martin*, 202 Ill. 382; 67 N. E. 1. The most that can be said in favor of the contentions of the petitioner would be that because of the relationship existing between petitioner and his brother, petitioner acquired this property for an inadequate consideration and that the element of gift was involved to the extent of the difference between the value of the property and the price paid. Whether such difference could be added to the purchase price to arrive at the basis to be used in computing gain or loss, where the alleged gift was made prior to January 1, 1921, is a question which we find it unnecessary to discuss; certainly it could be done, if at all, only where the evidence of a gift and its value is most convincing.

It is the contention of the petitioner that at the time he acquired this property it was worth $1,000,000. To substantiate this value there have been offered the opinions of real estate dealers. If these opinions are to be accepted the value of the property was substantially in excess of the price paid. One of the witnesses was the broker who undertook to sell the property for Rankin and became a member of the syndicate which contracted to sell the property to S. K. Jacobs. At least two members of this syndicate could have carried out the terms of their agreement to purchase, yet they sold for $850,000 property which one of their members now says had a market value of $1,000,000. Several reasons for this are suggested, but none of them seem sufficient to justify the belief that a profit of $150,000 would have been passed on to Jacobs had the syndicate members felt assured that the property could have been disposed of for $1,000,000. No doubt Jacobs drove a close bargain; no doubt there were circumstances which induced the syndicate to accept a price less than their estimate of the price which might be obtained from some person who was desirous of purchasing this property; no doubt they were justified in asking $1,000,000 as a price for which they could find some support; the fact is that the syndicate, while desirous of selling, was under no overwhelming necessity to do so and certainly not laboring under any necessity of sacrificing such a substantial part of the market value.

It must be borne in mind that the testimony of this witness, as well as of the others, was given ten years after the date as of which this property is valued. Since that date values have increased substantially in the section in question. The doubt with respect to the future trend of prices, which is always present, was a matter of the past. Looking back, they could see that prices had increased, while

in 1920 there might be opinions, but certainly there could be no assurance, that prices would increase. At the time of the sale the witness was dealing with present and future values; at the time he gave his testimony he was dealing with values of the past. The longer the period which has elapsed since the date as of which value is expressed, the less reliable is the opinion of value likely to be.

It must be remembered that we are dealing here with value at a particular date and not with intrinsic worth as disclosed by subsequent events. This value is most likely to be reflected in sales of the property, if freely made. In weighing the testimony of the first witness we are inclined to place greater weight upon the price at which he sold the property as reflecting his opinion at that time of its market value than upon the opinion which he expressed ten years later.

Another witness called by petitioner was the broker who sold the property for petitioner in 1923 for $950,000. He testified to an increase in values in this section of 20 to 25 per cent between 1920 and 1923; yet he was of the opinion that the property in question had a market value of $1,000,000 when acquired by petitioner in 1920. Questioned concerning the sale of property upon a neighboring street, he replied that this should not be taken into consideration; " there was a gambling house in there that had been raided and they sold it very cheap." Such an attitude upon the part of the witness indicates that he was either unfamiliar with the property here in question at the time the petitioner acquired it or ignored the fact that the hotel was in bad repute, had been raided and closed, was closed at the time petitioner acquired it and remained closed until its operation was taken over by the new tenant and its name changed.

There is another factor which deserves mention. This property was in the middle of the block with Broadway on the west and Sixth Avenue on the east. Broadway and 44th Street were in the midst of the amusement center of New York; Sixth Avenue, with its elevated railway structure, was occupied by small stores and lofts. The Broadway value did not continue down the side streets; yet there can be no reasonable doubt that property on the side streets near Broadway had a value substantially in excess of that near Sixth Avenue. Such a situation leaves room for much divergence of opinion with respect to value of property lying between. Such divergence of opinion would normally be reflected in a sale and must be considered when value is in question.

As against the opinion testimony we have the evidence of actual sales of this property. The brother of petitioner contracted to pay

$853,750 for it; petitioner paid $885,750; early in 1923 he sold it for $950,000 and later in that year or in 1924 it was again sold for $1,050,000. There is testimony that between 1920 and 1923 there was an increase of from 20 to 25 per cent in values and, while there is a conflict on this point, it is fair to assume that there was some increase. In 1920 the hotel was closed and its reputation was bad; in 1923 this was no longer so. Those who sold in 1920 were under no necessity of selling at any susbtantial sacrifice; the petitioner, in 1923, was under pressure to sell, but, in view of the interest of his wealthy brother, can not be said to have been in the position of making a forced sale. The failure of previous owners to operate the property successfully, its reputation, the fact that it was closed and its location all serve as speculative elements to make the value difficult of exact measurement. The price paid by petitioner and the values stated in the opinion testimony are within the range of difference which might be expected of reasonable men in these peculiar circumstances. The price paid is not out of line with subsequent sales, while the values stated in the opinion testimony are. We are of the opinion that the price paid by petitioner more nearly represented a fair price in an open market than the value now claimed. Certainly the proof of an excess value over the price paid is not so clear and convincing in this case as to require that what appears to be a purchase shall be treated as a gift. See *Taplin* v. *Commissioner*, 41 Fed. (2d) 454; *Anchor Co.* v. *Commissioner*, 42 Fed. (2d) 99.

We do not intend to indicate that S. K. Jacobs sold this property to petitioner in order that he might realize a profit of $32,000 or that he would have been content to have sold it to another on the same terms. Unquestionably he wished to benefit his brother, but the principal benefit lay in the fact that here was property which could be acquired with an expenditure of little or no cash which if successfully operated would pay for itself and which if unsuccessful could probably be sold without loss. The proposition looked sound; it was the kind that petitioner was prepared to handle and of which his brother wished him to have the benefits. The purpose was beneficent, but in our opinion the proof fails to establish that any gift was involved which would permit the petitioner to use as a base, in computing gain or loss, an amount in excess of that which he paid.

*Decision will be entered for the respondent.*